UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DALE LAYER

      Plaintiff,

v.                                                  Case No. 04-CV-74647-DT

CNA GROUP LIFE ASSURANCE        Honorable Patrick J. Duggan
COMPANY

      Defendant.
_____/

**<u>OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND DENYING PLAINTIFF'S CROSS-MOTION TO REVERSE ERISA PLAN ADMINISTRATOR'S DECISION</u>**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on JUNE 16, 2005.

PRESENT:        THE HONORABLE PATRICK J. DUGGAN
                          U.S. DISTRICT COURT JUDGE

Dale Layer ("Plaintiff") filed this lawsuit against the CNA Group Life Assurance Company ("Defendant"), seeking disability benefits under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132. Defendant is the administrator of the plan under which Plaintiff claims benefits.

On May 14, 2004, Defendant determined that Plaintiff was not entitled to long term disability benefits under the plan. Plaintiff filed this lawsuit on November 30, 2004.

On April 15, 2005, Defendant filed a Motion for Judgment on the Administrative Record and Plaintiff filed a Cross-Motion to Reverse [the] ERISA Plan Administrator's Decision. Defendant filed a Response to Plaintiff's motion on May 13, 2005.  Plaintiff subsequently filed supplemental memoranda of law on April 24 and May 13, 2005, providing relevant cases subsequently issued by the Sixth Circuit.  On May 25 and June 6, 2005, Defendant responded to Plaintiff's April 24 and May 13 memoranda, respectively.  Having reviewed the briefs filed in support of and in opposition to these motions, the Court sees no need for oral argument and therefore is dispensing with oral argument in accordance with Local Rule 7.1(e)(2).  For the reasons set forth below, Defendant's Motion shall be granted and Plaintiff's Motion shall be denied.

## FACTUAL BACKGROUND

Plaintiff filed a claim for Long Term Disability Benefits with Defendant on August 28, 2002.  Defendant is the third-party administrator of the insurance plan offered through Plaintiff's employer, Boise Cascade.  Plaintiff filed his claim after learning that he suffered from retinitis pigmentosa, a condition that results in significant loss of vision and, often, blindness.  (AR00028, 29).  Plaintiff was diagnosed by Dr. David Falconer, a general ophthalmologist, in August 2002.  Dr. Falconer noted Plaintiff's "significant loss of visual field," "moderate retina changes," and that "no treatment is available." (AR00028).  Recommending that Plaintiff no longer drive or work with machinery and that he avoid hazardous situations, Dr. Falconer concluded that Plaintiff was no longer able to occupy his current position with Boise Cascade as a warehouse worker.  Dr. Falconer, however, found Plaintiff "capable of clerical/administrative ('sedentary')

activity." (AR00029).

The disability insurance plan under which Plaintiff filed his claim provides in pertinent part:

> "*Disability*" means that during the *Elimination Period* and the following 12 months, *Injury* or *Sickness* causes physical or mental impairment to such a degree of severity that *You* are:
>
> 1) continuously unable to perform the *Material and Substantial Duties of Your Regular Occupation*; and
>
> 2) not working for wages in any occupation for which *You* are or become qualified by education, training or experience.
>
> After the *Monthly Benefit* has been payable for 12 months, "*Disability*" means that *Injury* or *Sickness* causes physical or mental impairment to such a degree of severity that *You* are:
>
> 1) continuously unable to engage in any occupation for which *You* are or become qualified by education, training or experience; and
>
> 2) not working for wages in any occupation for which *You* are or become qualified by education, training or experience.

(AR00009) (emphasis in original).  According to the policy, Plaintiff was not eligible for any plan benefits until he had been continuously disabled for six months.  (AR0003); (AR00010).  Plaintiff therefore filed for disability benefits on January 7, 2003.  Dr. Falconer filed an "Attending Physician's Statement" on January 10, 2003, in support of Plaintiff's request for benefits.  (AR00029).

On February 13, 2003, Christine Miller (Defendant's employee) recommended that

3

Defendant find Plaintiff eligible for initial LTD benefits because of his inability to perform his "Regular Occupation." (AR00089). Defendant's decision meant that Plaintiff would receive disability benefits for twelve months, effective February 22, 2003. Ms. Miller further recommended that Plaintiff undergo a "Vocational Assessment" to determine whether he was or could become qualified for any other occupation, as required by the policy, if he wished to receive disability payments after twelve months. (*Id*).

On June 27, 2003, Rebecca Katz (Defendant's employee) sent Plaintiff a letter informing him that Defendant intended to terminate his disability payments on February 21, 2004, because his disability did not meet the insurance policy requirements. Ms. Katz based her conclusions regarding Plaintiff's employment prospects on her review of the "current medical documentation" in Plaintiff's file, specifically the following notation by Dr. Falconer:

> capable of performing full time office work that is primarily seated in nature but does allow the flexibility to stand when needed and requires lifting no more than 10 pounds with the restrictions of no working around hazardous machines.

(AR00041). Ms. Katz therefore informed Plaintiff that his disability did not preclude him from holding certain "sedentary" jobs such as "Customer Service Representative," "Front Desk Clerk," and "Dispatcher." (*Id*). Ms. Katz wrote: "the information does not include evidence supporting your inability to perform any occupation beyond the 12-month Own Occupation period." (*Id*). Ms. Katz concluded: "you no longer meet the definition of total disability according to your Long Term Disability Plan beyond 2/21/04." (*Id*).

4

On December 23, 2003, Plaintiff responded to Defendant's June 27 rejection letter. Plaintiff did not dispute the findings by Dr. Falconer upon which Ms. Katz relied but stated that his condition had subsequently worsened and that Dr. Falconer therefore had changed his diagnosis. (AR00115). Dr. Falconer's new diagnosis, attached to Plaintiff's letter and dated December 19, 2003, stated "because of the worsening of [Plaintiff's] already severely restricted peripheral vision and the decrease in his best corrected visual acuity . . . he is not really a candidate for any form of employment." (AR00116). Copies of Plaintiff's visual fields were included with Plaintiff's December 23 letter. Plaintiff asked "to be reconsidered for monthly payments beyond February 2004 in light of these new findings." (AR00115).

Despite Plaintiff's December 23 letter, Defendant sent Plaintiff a letter on January 12, 2004, notifying him that no further benefits would be paid under the Long Term Disability policy beyond February 22, 2004. (AR00053). Defendant informed Plaintiff of its opinion that Dr. Falconer's second diagnosis lacked "evidence of a functional impairment that would prevent [Plaintiff] from working in any occupation." (*Id*). Defendant summarized its decision by stating: "the medical and vocational documentation in your file does not support that you remain disabled from any occupation at this time . . . If you disagree with our decision, you have the right to appeal." (*Id*). Defendant invited Plaintiff to submit additional medical information during the appeal. (*Id*).

Plaintiff appealed Defendant's decision on March 9, 2004. On April 22, 2004, Defendant notified Plaintiff's counsel that a review by a Medical Consultant was required

5

in order to conduct the appeal. (AR00046). Defendant referred the matter to University Disability Consortium, which selected Dr. Martin Shapiro to consult with Plaintiff's physician, Dr. Falconer.

Dr. Shapiro, a board certified ophthalmologist, spoke with Dr. Falconer about Plaintiff's medical history to determine the extent of Plaintiff's functional impairment. Their conversation is memorialized in a letter from Dr. Shapiro to Dr. Falconer, dated May 12, 2004. (AR00056-00059). Dr. Falconer signed the letter on May 18, 2004, confirming its accuracy. (AR00059). Dr. Falconer acknowledged that Plaintiff could perform work in another occupation, indicating: "the visual demands of a stationary desk job that involved phone work, a controlled well light [sic] environment, large font print, and possibly some low vision aids was within the patient's capabilities." (AR00057). Additionally, Dr. Shapiro reported that Dr. Falconer admitted the visual field tests conducted fourteen months apart (in August 2002 and December 2003) "showed severe and stable constriction of peripheral vision bilaterally, with no obvious interval change." (AR00057). On May 12, 2004, Dr. Shapiro sent a letter to Defendant regarding his review of Plaintiff's medical records and consultation with Dr. Falconer.

On May 14, 2004, Defendant affirmed its earlier decision to deny Plaintiff further disability payments under the Long Term Disability Plan. Plaintiff then commenced this action.

## STANDARD OF REVIEW

The standard of review of a denial of ERISA benefits depends on the language of the plan itself.  If the plans vests discretionary authority in the administrator, the denial may be reversed only upon a showing that the decision was "arbitrary and capricious."  *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 660 (6th Cir. 2004).  A court's review is limited to "the facts known to the plan administrator at the time he made the decision."  *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991);  *see also*, *Peruzzi v. Summa Med. Plan*, 137 F.3d 431, 433-34 (6th Cir. 1998).  The insurance policy clearly grants Defendant discretionary authority to determine Plaintiff's eligibility for benefits.  (AR00007).  Because the policy is clear and both Plaintiff and Defendant agree that the appropriate level of review is the arbitrary and capricious standard, the Court will proceed under that standard.

## ANALYSIS

The arbitrary and capricious standard requires only that the claim fiduciary's decision be "rational in light of the plan's provisions."  *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988).  In this case, Defendant's decision to deny Plaintiff disability benefits after twelve months is rational in light of the Long Term Disability Plan's provisions, which place the burden on Plaintiff of proving that he qualified for benefits under the terms of the policy.  (AR00016).  Plaintiff furnished the plan administrator with no proof of a disability as defined under the Long Term Disability Plan because he was unable to show that he could not occupy *any* occupation with his current education,

experience or training.[1] (AR0009)  With the exception of Dr. Falconer's December 2003 diagnosis, which Dr. Falconer subsequently modified during his conversation with Dr. Shapiro in May 2004, the administrative record contains no evidence in favor of defining Plaintiff's retinitis pigmentosa as a "disability" under the terms of Plaintiff's policy.[2]

Plaintiff argues that Dr. Shapiro's inability to provide an opinion regarding his visual capabilities after February 21, 2004, renders Defendant's denial of benefits unreasonable.[3]  The Court is unpersuaded by Plaintiff's argument as it overlooks the policy's terms requiring Plaintiff to demonstrate that his condition fits the policy's definition of "disability."  (AR00009); *see Miller*, 925 F.2d at 985-986 (holding that "under the terms of the Plan, it is the employee who must continue to supply on demand proof of continued disability to the satisfaction of the insurance company.")  Dr. Shapiro's conclusion merely reflects the fact that no evidence was before the Defendant's Appeals Unit that would lead to a reversal of Defendant's prior decision to deny Plaintiff

---

[1] Plaintiff furnished Defendant with a letter from another physician, Dr. George A. Williams, dated July 22, 2004, in which Dr. Williams states that Plaintiff is legally blind and not able to work on a computer or perform clerical work.  *See* Pl.'s Mot. Ex. A.  Dr. Williams' assessment is based on his examination of Plaintiff on July 12, 2004.  *See id*.  However as Dr. Williams' assessment was not presented to the plan administrator prior to the plan administrator's May 14, 2004 decision to deny Plaintiff LTD benefits– and in fact was not rendered until almost two months after that date– the Court cannot consider it.  *See Miller*, 925 F.2d at 986.

[2] Even if the Court were to consider Dr. Falconer's December 2003 diagnosis, the Court would not find Defendant's denial of benefits arbitrary and capricious.  Dr. Falconer's December 2003 diagnosis offered little medical evidence that a significant change in Plaintiff's actual condition had occurred that would prevent him from performing the type of work Dr. Falconer previously opined to be within his capabilities, as required by the LTD policy.  (AR00016).

[3] Dr. Shapiro wrote to Defendant: "given the lack of examination since 12/03, it is not possible to render an opinion regarding his visual capability from 2/21/04 through current, as requested in the referral form."  (AR00065).

benefits. Notably, even after Plaintiff learned that he would not receive benefits after February 2004 and decided to appeal that decision, he did not seek another medical examination that could have added to the record; nor did he submit any additional information to support his appeal. His failure to submit additional medical information was fatal to his appeal and remains fatal to his motion seeking reversal of the ERISA plan administrator's decision.

The Court also is not persuaded by Plaintiff's claim that Dr. Shapiro's review should be disregarded because Dr. Shapiro was "Defendant's employee." Even if the Court were to agree with Plaintiff's repeated characterization of Dr. Shapiro as "Defendant's employee," the Court would not take this apparent conflict of interest into account absent "significant evidence that the insurer was motivated by self-interest." *Wages v. Sandler O'Neill & Partners, L.P.*, No. 00-5994, 2002 U.S. App. LEXIS 3535, at **10 (6th Cir. March 1, 2002)(unpublished op.)(citing *Peruzzi*, 137 F.3d at 433). Plaintiff in this case has not directed the Court's attention to any evidence in the administrative record, let alone "significant evidence," that Defendant or its consulting doctor were motivated by self-interest.

Plaintiff further accuses Dr. Shapiro of reviewing Plaintiff's medical records in bad faith, which theoretically would provide a basis for overturning Defendant's decision to deny Plaintiff's disability payments.[4] *See Livingston v. Central States, S.E. and S.W.*

---

[4] Plaintiff claims Dr. Shapiro "badgered" Dr. Falconer and posed "ridiculous hypothetical questions" after being instructed "to glean anything," "at any cost" that would justify Defendant's denial of Plaintiff's claim. (Pl. Brief 12).

9

*Area Health and Welfare Fund,* 900 F. Supp. 108, 115 (E.D. Mich. 1995)(finding that an administrator's decision may be overturned "upon a showing of internal inconsistency, bad faith, or some other ground for calling such a determination into question.")  This allegation, however, is unsupported by the record.  Dr. Shapiro not only reviewed Plaintiff's existing medical records but also contacted Plaintiff's treating physician, Dr. Falconer, to discuss Plaintiff's condition.  Their conversation was accurately represented by Dr. Shapiro in his May 12, 2004 letter, as acknowledged by Dr. Falconer.  There is no evidence in the record or otherwise to support Plaintiff's accusations of "badgering" and "ridiculous hypothetical questions" by Dr. Shapiro.

  Additionally, the Court believes that Plaintiff's medical documentation, which includes a diagnosis by his treating physician affirming Plaintiff's ability to work under particular conditions, constitutes medical evidence sufficient to support the plan administrator's decision.  (AR00029); (AR00041); (AR00057).  "Where a fiduciary's decision to deny disability benefits is supported by *any* medical evidence the decision cannot be said to be arbitrary and capricious."  *Odenwaller v. Aetna Life Ins. Co.*, No. K86-283CA4, 1988 U.S. Dist. LEXIS 18023, at *9 (W.D. Mich. May 27, 1988)(unpublished op.)(emphasis added)(quoting *Torimino v. United Food and Commercial Workers,* 548 F. Supp. 1012, 1014 (E.D. Mo 1982)); *see also McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003)(citing *Abnathya v. Hoffman-LaRoche, Inc.*, 2 F.3d 40, 47 (3d Cir. 1993)(holding that a plan administrator may rely upon a single medical opinion finding that an employee is not disabled).  The record contains a significant amount of medical evidence supporting Defendant's

conclusion.

## **CONCLUSION**

In conclusion, this Court finds that Defendant has offered a "reasoned explanation, based on evidence" for its denial of Plaintiff's disability benefits under the LTD policy. *Smith v. Ameritech,* 129 F.3d 857, 863 (6th Cir. 1997)(holding that "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious.")

As the record indicates, Defendant relied on the following in reaching its conclusion: Ms. Miller's initial review, which included Dr. Falconer's "Attending Physician's Statement" (AR00089); Ms. Katz' "re-review" based in part on Dr. Falconer's "Functional Assessment Test" and her telephone conversation with Dr. Falconer; and Defendant's appeal review, which included Dr. Shapiro's opinion based on his medical consultation with Dr. Falconer (AR00055-00069).  Dr. Shapiro is a board certified ophthalmologist who rendered his opinion after reviewing Plaintiff's medical records, consulting with Plaintiff's treating physician, and concluding (notably with Dr. Falconer) that Plaintiff's most recent visual field tests "showed severe and stable constriction of peripheral vision bilaterally, with no obvious interval change." (AR00057).  Both Dr. Shapiro and Dr. Falconer agreed that "the visual demands of a stationary desk job that involved phone work, a controlled well light [sic] environment, large font print, and possibly some low vision aids was within [Plaintiff's] capabilities." (*Id*).

Based on the applicable standard of review and the terms of the LTD policy,  the

Court must find that Defendant's decision to deny Plaintiff LTD benefits was not arbitrary and capricious. Accordingly,

**IT IS ORDERED**, that Defendant's Motion for Judgment on the Administrative Record is **GRANTED**;

**IT IS FURTHER ORDERED**, that Plaintiff's Cross-Motion to Reverse ERISA Plan Administrator's Decision is **DENIED.**

                                    s/PATRICK J. DUGGAN
                                    UNITED STATES DISTRICT

Copies to:
Christopher S.C. Webber, Esq.
Michael A. Alaimo, Esq.